HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SCOTT C. SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>TRACY SCHNEIDER and BRIAN PETERSON,<br><br>    Defendant. | CASE NO. 3:10-CV-05228-RBL<br><br>ORDER DENYING PLAINTIFF'S MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court on the Defendants' Motion for Summary Judgment. The case concerns a sexually explicit letter written by Plaintiff Scott Smith, a Clallam Bay Corrections Center inmate. Upon discovering the letter, the prison cited Smith for two infractions. Smith sued two prison employees, Tracy Schneider and Brian Pederson, claiming they violated his First Amendment rights. Smith also alleges that the disciplinary proceedings against him after the prison confiscated his letter violated his due process rights. Finally, Smith asserts violations under the Washington Administrative Code, negligence, and negligent training and supervision. Defendants argue that Smith did not have a First Amendment right to send a sexually explicit letter, and even if he did, the right was not clearly established at the time.

Defendants also request summary judgment on Smith's due process, state law, and negligence claims. Defendants' Motion is GRANTED.

## I. BACKGROUND

In order to reduce and eliminate sexual assaults in the prison system, the Washington Department of Corrections implemented a strict policy against sexually explicit material. (Def. Mot. for Summ. J. at 6.) Under Washington Regulation, a prison inmate is subject to a serious infraction for the possession of sexually explicit material. WASH. ADMIN. CODE 137-25-030. Additionally, the Department of Corrections may disapprove any prisoner mail containing sexually explicit materials. WASH. ADMIN. CODE 137-48-040(2)(a). The Department defines sexually explicit materials as "those written materials that are intended for sexual gratification" and describe sexual behaviors "as the predominant theme of the publication or letter." WASH. ADMIN. CODE 134-48-020(13); WASH. ADMIN. CODE 137-25-020. In addition to addressing the concerns of sexual aggression, the policy "was implemented to reduce the unwanted exposure to staff of sexually explicit material during the course of their routine jobs." (Def. Mot. for Summ. J. at 6.)

On November 6, 2008, as part of Schneider's duties as the mail room and property room sergeant, she randomly selected Smith's outgoing letter for inspection. (Defs.' Mot. for Summ. J. at 2.) Upon reading the letter, Schneider discovered the content was of a sexually explicit nature.[1] (Defs.' Mot. for Summ. J. at 2; First Amend. Compl. at 4.) Schneider subsequently cited Smith for two violations of the Washington Administrative Code—sexual harassment and possession of sexually explicit material. (First Amend. Compl. at 4—5.) After placing the letter

---

[1] The letter is objectively filthy.

1  in the evidence locker, Schneider completed a search report documenting the confiscation of the
2  letter and provided it to Smith.

3  On November 10th, Defendant Brian Pederson served Smith with a serious infraction.
4  (Smith Dec., Dkt. #98, at 5.) The Defendants claim that Pederson served Smith in his capacity as
5  the hearing officer. (Defs.' Mot. for Summ. J., Dkt. #79, at 3.) But Smith alleges that Pederson
6  served him as hearing clerk and later went on to preside over the proceeding as the hearing
7  officer. (First Amend. Compl. at 6.) In any event, less than a week after confiscation of the
8  letter, Pederson presided over Smith's disciplinary infraction hearing. Pederson found Smith
9  guilty of both infractions and punished him to confinement to his cell for a period of ten days and
10 a fifteen day loss of gym and yard privileges.

11 Smith appealed the decision to the superintendent of the institution. (Defs.' Mot. for
12 Summ. J. at 4.) Although Superintendent Brunson dismissed the sexual harassment charge, she
13 upheld the finding of guilty as to the possession of sexually explicit material and the sanction.
14 Following the superintendent's decision, Pederson destroyed the letter.

15 Based on the letter's confiscation, Smith filed a complaint against Schneider and
16 Pederson. First, Smith asserts claims under 42 U.S.C. § 1983 for First Amendment violations.
17 Second, Smith asserts a violation of his due process rights. Finally, Smith asserts various claims
18 under the Washington Administrative Code, negligence, and negligent training. Pederson and
19 Schneider moved for summary judgment on all of Smith's claims. Smith asks the Court to Strike
20 the Summary Judgment Motion, arguing that the Defendants fraudulently made the Motion
21 because he was not given access to the transcript exhibit at the time of service. (Pl. Mot. to
22 Strike, Dkt. #84.)

23 ////

24

## II. ANALYSIS

### A. Motion to Strike.

Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment is DENIED because the basis for it (lack of transcript) has long since been remedied. Smith now has access to the transcript and is free to use it in connection with this litigation. (Defs.' Resp. to Mot. to Strike, Dkt. #91.)

### B. Motion for Summary Judgment.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

#### 1. Defendants are Entitled to Qualified Immunity.

Defendants argue that they are entitled to qualified immunity because they did not violate Smith's First Amendment rights, and even if they did, the right was not clearly established.

1  Smith responds that the Defendants violated his clearly established First Amendment right to
2  send a letter from the prison to a private non-prisoner party.

3  Public officials are "shielded from liability for civil damages insofar as their conduct
4  does not violate clearly established statutory or constitutional rights of which a reasonable person
5  would have known." *Harlow v. Fitzgerarld*, 457 U.S. 800, 818 (1982).  The existence of
6  qualified immunity generally turns on the objective reasonableness of the actions, without regard
7  to the knowledge or subjective intent of the particular officer. *Id*. at 819.  Generally, whether a
8  reasonable officer could believe his or her conduct was proper is a question for the court to
9  determine as a matter of law. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872—73 (9th Cir.
10 1993).

11 In analyzing a qualified immunity defense, the Court must consider two factors: (1)
12 whether a constitutional right has been violated on the facts alleged, taken in the light most
13 favorable to the party asserting the injury, and (2) whether the right was clearly established when
14 viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *see also*
15 *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

16         *i.*    *Defendants Did Not Violate a Constitutional Right.*

17 Smith argues that the confiscation of his letter violated his First Amendment right to
18 communicate with non-prisoners.  Although the prison punished Smith under the regulation for
19 possession of the material, Smith argues that the regulation that allowed for the confiscation of
20 the letter resulted in the constitutional violation.  But, logically, if Smith cannot possess the
21 material, he also cannot send the material.  Thus, the constitutionality hinges on the regulation
22 forbidding Smith from possessing the material.

23

24

ORDER DENYING PLAINTIFF'S MOTION TO
STRIKE AND GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 5

1    Although some constitutional rights are incompatible with incarceration, "inmates do not
2 give up their constitutional rights when they walk through the prison gates." *Bahrampour v.*
3 *Lampert*, 536 F.3d 969, 975 (2004).  When determining whether a constitutional violation of an
4 inmate's rights has occurred, the Court must be "responsive both to the 'policy of judicial
5 restraint regarding prisoner complaints and [to] the need to protect constitutional rights.'"
6 *Turner v. Safley*, 482 U.S. 78, 85 (1987) (*citing Procunier v. Martinez*, 416 U.S. 396, 406
7 (1974)).  Under *Turner*, the Court must consider four factors to determine whether a prison
8 restriction amounts to a constitutional violation: (1) whether a valid, rational connection between
9 the prison regulation and the legitimate governmental interest exists; (2) whether alternative
10 means of exercising the right remain open to the prison inmate; (3) whether an accommodation
11 of the asserted right will have an impact on the guards, inmates, and prison resources; and (4)
12 whether there is an absence of alternatives.  *Id*. at 89—90.

13    The first factor—that the regulations be content neutral and rationally connected to a
14 legitimate penological interest—weighs in favor of the Department.  *Turner*, 482 U.S. at 89.
15 Generally, if the regulation applies to a specific type of content due to specific inherent risks or
16 harms, the regulation is content neutral. *Bahrampour*, 536 F.3d at 975.  In order for the
17 regulation to be rationally connected to the penological interest, "[t]he link cannot be so tenuous
18 that the application is irrational or arbitrary.  *Id*.

19    Reduction of sexual violence and aggression in the prison system is a legitimate
20 governmental interest.  In order to address the risk of increased sexual aggression, the
21 Department adopted a regulation banning all sexually explicit written material that was primarily
22 used for sexual gratification.  The regulation has a rational connection to the Department's goal.
23 Indeed, the Ninth Circuit has already recognized the relationship between sexually explicit
24

ORDER DENYING PLAINTIFF'S MOTION TO
STRIKE AND GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 6

materials and the legitimate goals of preventing sexual harassment. *See Mauro v. Arpaio*, 188 F.3d 1054, 1060 (1999) ("The relationship between the jail's policy of prohibiting the possession of sexually explicit materials and the goals of preventing sexual harassment of the female officers, inmate rehabilitation and maintenance of jail security is not so remote as to render the policy arbitrary or irrational.") (internal citations omitted).

Additionally, the second factor—whether the regulation deprives prisoners of all means of expression—weighs in favor of the department. Although the Department does not allow inmates to possess sexually explicit material for sexual gratification, the Department does not deny inmates all First Amendment rights. In fact, inmates may possess written sexually explicit material if it has a purpose other than sexual gratification. If a prisoner wishes to write a letter discussing a multitude of topics, including his or her sexual desires, the Department would allow the letter under the current regulation.

The third factor—a consideration of the potential impact on the guards, other inmates, and prison resources if the Court protects the asserted right—also weighs in favor of the Department. If accommodation of the right significantly affects the administration of the prison system, the Court should give deference to those officials responsible for prison policy. *Bahrampour*, 536 F.3d at 975. This case exemplifies the potential impact of allowing the sexually explicit material written for the sole purpose of sexual gratification. Smith did not write a sexually explicit story and keep it in his cell. The letter came across Schneider while she conducted her job. She was personally offended. (Def. Mot. for Summ. J. at 2.) If the prison allows inmates to write sexually explicit material for the sole purpose of sexual gratification, the materials could expose officers to a hostile work environment. *Mauro*, 188 F.3d at 1062.

Finally, the fourth factor—whether alternative solutions exist that would preserve the constitutional rights of the inmate—weighs in favor of the Department. Generally, if the prison can easily implement equally effective policies, the prison's current policy may be an exaggerated response to a legitimate government interest. *Bahrampour*, 536 F.3d at 976. The burden of showing obvious, easy alternatives is on the prisoner challenging the regulation. *Mauro*, 188 F.3d at 1062. An equally effective policy has not been drawn to the Court's attention. The absence of readily available alternative is evidence of a reasonable regulation. *Bahrampour*, 536 F.3d at 976.

All four of the *Turner* factors weigh in favor of finding that the Department's regulation is constitutional. The regulation is a rationally related, content-neutral, response to sexual aggression in the prison system. Smith still has First Amendment rights, and he can write a letter with sexually explicit material as long as the letter's sole purpose is not for sexual gratification. Thus, no constitutional right was violated.

### ii. *A Constitutional Right was Not Clearly Established.*

However, even if Schneider and Peterson violated a constitutional right, the right was not clearly established at the time their actions took place. No case law states that confiscation of porn in prison violates an inmate's First Amendment right. Smith does not, and cannot, argue otherwise.

Therefore, the Defendants' Motion for Summary Judgment on the First Amendment claim is GRANTED.

### 2. The Due Process Clause was Not Implicated.

Defendants also move for Summary Judgment on Smith's due process claim because the due process clause was not implicated by the sanctions. The Department correctly notes that constitutional liberty interests are not implicated unless the punishment is an "atypical,

significant deprivation" from normal prison conditions. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). The minor sanction of ten day cell confinement and fifteen day los of recreation privileges did not deprive Smith of a liberty interest that implicates due process concerns.

Smith was notified that his letter had been seized, he was given a hearing, and he appealed to the superintendent. "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987). Given Smith's notice and opportunity to be heard, no reasonable jury could find that the Defendants' actions deprived Smith of due process.

The Defendants' Motion for Summary Judgment on Smith's due process claim is GRANTED.

### 3.  WAC Violations do Not Create a Private Right of Action.

The Defendants move for Summary Judgment on all of Smith's state law claims, arguing that the Washington Administrative Codes at issue do not create a private right of action. The Department is correct. Under WASH. ADMIN. CODE 137-28-140, prison punishment procedures "do not create any procedural or substantive rights in any person."

Thus, the Defendants' Motion for Summary Judgment on the WAC 137-28 claims is GRANTED.

### 4.  Defendants Did Not Act Negligently.

The Defendants move for Summary Judgment on Smith's negligence claim, arguing that they did not owe Smith a duty. Smith did not brief the issue in his response. The actions of Schneider and Peterson did not rise to the level of negligence.

The Defendants' Motion for Summary Judgment on the negligent performance of their duties claim is GRANTED.

### 5. Defendants are Not Liable for Their Own Training.

Finally, the Defendants move for Summary Judgment on Smith's negligent training claim, arguing that it is illogical to hold them liable for failing to be properly trained. The Court is inclined to agree with the Defendants.

Thus, the Defendants' Motion for Summary Judgment for the Negligent Failure to Train Claim is GRANTED.

### III. CONCLUSION

The Plaintiff's Motion to Strike is DENIED.

The Defendants' Motion for Summary Judgment is GRANTED and this case is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated this 4th day of September, 2012.

Ronald B. Leighton
United States District Judge